**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Jorge Wuilson Romero, *on behalf of himself and others similarly situated,* )
)
)   Civ. Case No. 1:16-cv-04282-PKC-RLM
*Plaintiff,* )
)
-v- )   **DECLARATION OF JORGE WUILSON**
)   **ROMERO IN SUPPORT OF**
Floris Construction, Inc. and Stamatis Kostikidis, *in his individual and professional capacity,* )   **PLAINTIFF'S MOTION FOR DEFAULT**
)   **JUDGMENT**
)
)
*Defendants.* )

I, Jorge Wuilson Romero, declare under the penalty of perjury pursuant to 28 U.S.C. §1746, that:

1. I am a Plaintiff in the above-captioned action, and have personal knowledge of the matters stated below.

2. I am an adult individual residing in the state of New York, County of Queens.

3. I worked for the Defendants from April 2015 to May 2016 as a construction worker.

4. Defendant Floris Construction Inc. is owned by Stamatis Kostikidis. I know this because he told me so. Also, he would give me pay checks bearing the company's name title which he signed.

5. While working for Defendants, my duties included carpentry, painting, and plastering. I would go and work at different locations in Manhattan as instructed by Defendant Kostikidis.

6. Defendant Kostikidis was also in charge of ordering all the supplies and tools we needed. He would order those from Prince Lumber; a company stationed in New York and New Jersey who sold lumber, hardware, and other building materials.

7. Defendants employed approximately 60 full-time employees at any given time.

8. Kostikidis retained foremen who, in turn, hired most of the company's employees, including myself. The foremen were hired and paid by Kostikidis.

9. Kostikidis was present at the job site all day for several hours per day. He would oversee the work of all employees. If a foreman had hired a worker and Kostikidis deemed that their performance was not up to standards, Kostikidis would fire that worker.

10. I saw Kostikidis fire a number of employees while working for Defendants.

11. My schedule was set by Kostikidis every day.

12. Throughout my period of employment with Defendants, I worked six days per week for approximately eight to ten hours per day. Specifically, I would arrive at the job site at 8:00 a.m. I would work until 12:00 p.m. and then take a half hour lunch break. I would then continue working from 12:30 p.m. to around 4:30 p.m. However, sometimes Defendants would be under pressure from contractors to finish a certain job quickly. As such, sometimes, I would have to stay at work until 5:00 p.m.

13. I was paid a fixed amount of Eight Hundred Dollars ($800) per week in 2015 which was increased to One Thousand Dollars ($1,000) per week in 2016. I was paid at this fixed rate regardless of the number of hours I worked each week.

14. I was never paid at an overtime rate of one and one-half times my regular rate of pay for all the hours I worked which exceeded 40 hours per week.

15. I complained several times to Kostikidis regarding Defendants' failure to pay me overtime but nothing was done to address my complaints.

16. Kostikidis set my rate of pay and signed all the pay stubs I got. Kostikidis also gave me my pay checks, as well as my tax documents, including a W-2 Form.

17. I was not provided with a notice containing the rate and basis of my pay; the designated pay date; and the employer's name, address and telephone number at the time of hiring or at any point thereafter.

18. Even though I was paid by check, I was never provided with accurate wage statements which reflected my dates and number of hours worked, money received and the employer's details at any point during the time of my employment with Defendants.

19. Throughout the duration of my employment, I did not have any supervisory authority over any other employees nor did I exercise discretion over any matter. Specifically, I never hired or fired anyone; nor did I have the authority to do so. I had no managerial duties whatsoever and I had no say in the company's business decisions.

20. During my employment, I never saw any notices in the office explaining our wage and hour rights under the federal and/or state laws.

21. On May 16, 2016, I was tasked with placing sheetrock in an apartment building. Due to the dangers involved in cutting and handling sheetrock, we were required to wear special face marks to prevent dust and other chemicals from getting into our eyes. An employee, called Christian Gonzalez, was tasked with distributing face masks to all construction workers involved in the project. However, he refused to give me a face mask even after I kindly requested it.

22.     I tried to explain to him that I really needed to wear that mask to keep myself safe, and, in response, Christian Gonzalez, got angry and started hitting me. He then pushed me against a T-square. I still have a big cut on my back until the present date from this incident.

23.     The incident happened in public and in front of several other employees who feared for their safety. At one point, a fellow employee came between us and tried to stop Christian from hitting me. At that point Christian said "I am going to kill you both."

24.     In fact, Christian Gonzalez had made death threats numerous times before to many employees of Defendants.

25.     I was badly injured, in great pain, and in fear of my life. I tried several times to contact Defendant Kostikidis, as well as my supervisor, but was not able to reach them.

26.     As a result of not being able to reach the Defendants, and being afraid of more injuries, I called 9-1-1. The police promptly arrived at the scene and proceeded with assisting me and getting me to a hospital in order to receive the medical attention that I needed as a result of the injuries I assisted.

27.     The police also conducted interviews and took pictures of the incident. Christian Gonzalez was arrested.

28.     On the same day of the incident, I told Defendant Kostikidis about what happened so that he could hopefully correct the situation by disciplining Christian Gonzalez. However, to my surprise, when I went to work the following day, I was immediately fired. I was told to go home and never return to work again.

29.     One of my previous co-workers has since told me that Christian Gonzalez was temporarily suspended but then allowed to go back to work.

30. I respectfully submit this declaration in support of the motion for default judgment.

31. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: Astoria, New York
       March 6, 2017

*/s/ Jorge Wuilson Romero*
JORGE WUILSON ROMERO